

February 21, 2013

<u>Via email to Annette.Pedigo@cobbcounty.org</u>
Annette Pedigo
Cobb County Solicitor General's Office
10 East Park Square, Suite 300
Marietta, GA 30090

**Re: State v. Amy Barnes: Response to Your Email Regarding Video Enhancement**

Dear Annette,

Thanks for the email, but as set forth below, any "enhancement" of the video will not impact the constitutional problems with this case.

As applied in the Amended Accusation, this is an attempt to prosecute Ms. Barnes for core political speech and specifically targets her use from a distance of an isolated expletive in her criticism of the police.[1] Yet, the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." <u>Houston v. Hill</u>, 482 U.S. 451, 462-63 (footnote omitted).

The United States Supreme Court has made it clear that disorderly conduct statutes that seek to regulate speech, such as the ones that Ms. Barnes is being prosecuted under, must "be carefully drawn or authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." <u>Gooding v. Wilson, 405 U.S. 518, 522</u> (1972). Not surprisingly, Georgia courts have never found a single instance of "fighting words" when a citizen, who is a safe distance away from anyone else (certainly more than arm

---

[1] Of course, a core function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." <u>Texas v. Johnson, 491 U.S. 397, 408</u> (1989). "[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions." <u>New York Times v. Sullivan</u>, 376 U.S. 254, 269 (1964) (citations omitted). Indeed, "'[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures.' Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to 'vehement, caustic, and sometimes unpleasantly sharp attacks.'" <u>Hustler Magazine, Inc. v. Falwell</u>, 485 U.S. 46, 53-55 (1988).

distance) uses profanity to emphasize words that are a matter of general political protest. See, e.g. Woodward v. Gray, 241 Ga. App. 847 (2000) (reversed on other grounds) (finding no probable cause to arrest 1983 female plaintiff for disorderly conduct when, standing only eight feet away from a police officer, she protested the arrest of her brother by "yell[ing] loudly in front of a crowd" that "she didn't have to go any fucking where"; "you can't tell me what to do[; t]his is public property[;] I pay your fucking salary[; y]ou don't have to, and the hell with you" because "[t]here existed no provocation in plaintiff's conduct that would breach the peace; she did not seek to incite family and neighbors against the police."); City of Macon v. Smith, 244 Ga. 157 (1979) (holding unconstitutional the application of disorderly conduct statute to female plaintiff for shooting a bird at the doorman of a hotel lobby walking out of the hotel after being asked to leave due to improper clothing because "the record does not indicate that her conduct was sufficiently belligerent to incite an immediate breach of the peace").

Although the officer has insisted that profanity uttered in front of children can, by itself, provide a basis for prosecution, the law is clearly to the contrary. Likely because there is no compelling interest to protect children from fleeting exposure to profane words in public, and to ensure there is no "abridgment" of constitutional rights, Georgia courts have found since 1999 that state law cannot criminalize profanity – *even when children are present* – unless it constitutes "fighting words" as such words are understood in First Amendment jurisprudence. See, e.g., Lundgren v. State, 238 Ga. App. 425 (1999) (discussing former version of O.C.G.A. 16-11-39(a)(4)); L.E.N., 299 Ga. App. 133 (2009);[2] contra Turner v. State, 274 Ga. App. 731 (2005) (reversing conviction of defendant who yelled "you bastards" *while driving past two police officers* because even though the statement was "obscene, vulgar, and profane," it did not "reach the level of 'fighting words'" such that the "conviction for disorderly conduct [could not] stand").

Furthermore, even *after her arrest,* Ms. Barnes posed no threat after being handcuffed. She complied with the officers' requests during transit to jail and was seen sitting calmly in the back seat of the police car on the ride to jail. During her stay at the Cobb County Adult Detention

---

[2] In L.E.N., the Court of Appeals overturned a conviction for disorderly conduct on grounds that the mere use of profanity in the presence of over sixty children in a school lunchroom could not support a disorderly conduct conviction. In that case, the defendant demanded his teacher give him back his "F---- sharpie." in a school lunchroom in front of approximately sixty other children. Id. at 134. In discussing the doctrine of "fighting words," the Court of Appeals emphasized that "being rude, disrespectful, or angry in conjunction with the use of profanity or an angry statement" alone simply is not sufficient to support a conviction for disorderly conduct. Id. The Georgia Court of Appeals acknowledged that the presence of children was not sufficient to somehow take the student's free expression outside the protection of the First Amendment, explaining:

> OCGA § 16-11-39(a)(4) states that the statute is violated if the person "uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace." "To ensure no abridgment of constitutional rights, the application of OCGA § 16-11-39's proscription on `fighting words' must necessarily be narrow and limited."

Center, she posed no threat to any of the inmates and was separated on the reasoning that she has hearing loss. See: L.E.N., 299 Ga. App. 133 (2009).[3]

The fact of this case are most akin to Cohen v. California, 403 U.S. 15 (1971), wherein the Supreme Court found that punishment of an individual for wearing a jacket bearing a political message similar to Ms. Barnes' -- "Fuck the Draft" -- was an unconstitutional restriction of free expression. Id. As part of its reasoning, the Court found it significant that no one who saw the defendant's jacket was "violently aroused" or "commit[ted] or threaten[ed] to commit any act of violence." Id. at 17, 20. Like Cohen, this is not a case in which Ms. Barnes' profanity was likely to, or did, incite violence. Contra Davenport v. State, 184 Ga. App. 214 (1987) (affirming conviction for disorderly conduct when defendant used abusive and obscene language in argument with K-Mart security guard, because "she invoked violence against herself and provoked passions in bystanders"). None of Ms. Barnes' actions can reasonably be said to have amounted to threatening or tumultuous behavior. What Ms. Barnes did was engage in core political speech expressing her general criticism of the police. She did not threaten violence and her words did not incite violence, nor were they likely to incite violence anyone.

Quite simply, words alone, *unaccompanied by any evidence of actual violent arousal*, are not "fighting words," and are therefore protected speech. Brandenburg v. Ohio, 395 U.S. 444, 447 (1969) (explaining that "fighting words" are those that are: (1) "directed to inciting imminent lawless action" and (2) "likely to incite or produce such action"). To be punishable, then, words *must* do more than simply bother or offend the listener -- they instead must be nothing less than "an invitation to exchange fisticuffs." Texas v. Johnson, 491 U.S. 397, 409 (1989). Certainly, mere speculation that an offensive message *might* result in a public outrage is not enough. Cohen v. California, 403 U.S. 15 (1971).

Georgia courts have consistently recognized that the use of profanity rises to the level of "fighting words" only in certain specific, limited situations, none of which are present here. For example, Georgia courts have upheld a conviction for "fighting words" against police officers only if the surrounding circumstances evidence a personal attack, insult, threat or abusive language in a direct and close confrontation of such a nature that it would reasonably provoke violent resentment and incite an immediate breach of the peace. See e.g., Brooks v. State, 166 Ga. App. 704 (1983) (upholding conviction when a man, during a protest of the conviction of Wayne Williams, personally insulted a police officer by pointing to him and yelling to a crowd of 150 to 200 people not only that "cops are dogs" but also that "[t]his man here is a dog" because such language "naturally tend to provoke violent resentment"); Tucker v. State, 233 Ga. App. 314 (1998) (upholding conviction for repeatedly yelling personal insults such as "[t]hese f___ing c—ts," and "fuck you" in a crowded restaurant that seats approximately 200 people because "the words used were likely to and *did* provoke violence and raised hostility in the minds of other customers") (emphasis added); Johnson v. State, 255 Ga. App. 537 (2002) (upholding conviction for a man who was repeatedly yelling numerous obscenities in the midst of a crowd in a park, which included small children, and who refused to stop after being directed by a police officer to stop, further exclaimed in a personal confrontation "fuck the police", and

---

[3] In L.E.N., the court specifically noted that although the profanity was certainly "rude and disrespectful" the student was escorted to the principal's office "without further incident." Id. at 134. Moreover, the Court of Appeals found that the angry outburst and use of profanity was not sufficient to support a finding that an "average hearer would be goaded into violence." Id.

then "push[ing] one of the officers in the chest several times and repeatedly kick[ing] the other officer" when they attempted to arrest him); Evans v. State, 241 Ga.App. 32 (1999) (affirming conviction for disorderly conduct against a man who, after being accused of stealing cotton candy, screamed "several obscenities" and then threatened to get his gun and shoot him, because "'fighting words' can include specific threats to cause violence where they tend to provoke violent resentment").

In contrast to the foregoing cases, Ms. Barnes' encounter with the police officers was not a direct face to face confrontation; she was merely recited two sentences of a general protest song from a non-threatening distance. Thus, any "enhancement" of the video cannot change the fact that the officer arrested Ms. Barnes because of what she said. In short, the officer here had no probable cause to arrest Ms. Barnes since her protest use of the f___ word, which, while rude and disrespectful, simply was not "threatening, belligerent, profane, or abusive enough" to "goad" anyone into violence, especially not the police officer. In re L.E.N. at 135; Lamar v. Banks, 684 F.2d 714, 719 n.13 (11th Cir. 1982).

Please let me know if you would like to have a conversation about these issues or what authority you are relying upon as a basis for continuing the prosecution of Ms. Barnes. Based on the well-established case law I have recited, I would ask that you once again consider dismissing the charges.

Sincerely,

*Cynthia Counts*

Cynthia Counts

cc: Barry Morgan (Barry.Morgan@cobbcounty.org)